**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| L.M.L., K.G.S., on behalf of themselves and all those similarly situated,<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>FREEMAN F. MARTIN, in his official capacity as Director of the State of Texas Department of Public Safety,<br><br><br>Defendant. | Case No. 1:26-cv-1170 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This action challenges Senate Bill 4 (88th Leg. (4th special session)) ("S.B. 4"), which purports to give Texas state officials the unprecedented power to arrest, detain, and deport noncitizens in the State of Texas.  Under this novel system, the State of Texas has created its own immigration crimes; state police arrest noncitizens for alleged violations of these crimes; state prosecutors bring charges in state courts; state judges order deportation to Mexico (no matter the country a person is from); and state officers carry out those orders.  The federal government has no role in, and no control over, Texas's scheme.

2.      Among other provisions, S.B. 4 creates a state crime for "reentry"—coming back to or being found in the United States after deportation.  Unlike federal law, it contains no exceptions, including for individuals granted federal permission to reenter the country.

3.      S.B. 4 violates the Supremacy Clause of the United States Constitution.  Immigration is a quintessentially federal authority.  Congress has created a carefully calibrated immigration system, with detailed procedures that determine whether a person may remain in the United States, when criminal immigration charges may be deployed in the exercise of prosecutorial discretion, and what protections people receive to ensure that they are not removed to a place where they face persecution.

4.      Congress placed all of the relevant tools and decision-making in the hands of *federal* officials—in keeping with the federal government's exclusive immigration powers and the sensitive foreign policy implications of these powers.  S.B. 4 jettisons this system, grasping control over immigration from the federal government and depriving people subject to that system of *all* of the federal rights and due process that Congress provided to them, including the rights to contest removal and seek asylum.

5.      S.B. 4 is preempted.  A state cannot replace Congress's immigration scheme with its own.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in the Western District of Texas because a substantial portion of the relevant events occurred or will occur in the District and because Defendants reside in the District.  28 U.S.C. § 1391(b).

## PARTIES

8.      Plaintiff L.M.L. is a 56-year-old lawful permanent resident of the United States and citizen of Honduras. He lives in Austin, Texas with his lawful permanent resident wife, his 21-year-old lawful permanent resident daughter, and his 11-year-old United States citizen son. He entered the United States for the first time in 1997 and was deported.  In 2006, he entered the United States without inspection.  In about 2023, he became a lawful permanent resident of the United States.  L.M.L fears that he will be arrested, detained, and deported under S.B. 4's reentry provision.  L.M.L. is the primary breadwinner and caretaker for his wife and children because his wife's diabetes and high blood pressure make it difficult for her to work.

9.      K.G.S. is a 29-year-old citizen of Honduras.  She currently lives in Austin, Texas with her two children, ages seven and three, one of whom is a United States citizen.  In about 2014, when she was a child, K.G.S. entered the United States without inspection; she was later issued a deportation order. In 2021, she entered the United States without inspection for the second time.  She has been approved for a U-visa.  She fears she will be arrested, detained, and deported under S.B. 4's reentry provision.  She is the primary breadwinner and caretaker for her children.

10.     Defendant Freeman F. Martin is the Director of the Texas Department of Public Safety ("DPS").  He is "directly responsible . . . for the conduct of the department's affairs" and serves as "executive director of the department," among other duties and responsibilities. Tex. Gov't Code § 411.006(a)(1)-(2).  He is sued in his official capacity.

11.      Director Martin has emphasized what he perceives to be the benefits of "[e]nforcement of S.B.4," and cited plans for DPS's enforcement of the law.  Defs'-Appellants' Suppl. En Banc Br. 24, 49, *United States v. Texas*, No. 24-50149, ECF No. 360 (*filed* Oct. 13, 2025).  Under Director Martin's leadership, DPS has made it a priority to arrest noncitizens.  Texas Governor Greg Abbott recently affirmed that S.B. 4 is an "unprecedented law" that "empower[s] state officials to arrest and deport."

## STATEMENT OF FACTS

### A.     Legal Background: Comprehensive Federal Immigration System

12.     The federal government has exclusive power over immigration.  *See*, *e.g.*, *Arizona v. United States*, 567 U.S. 387, 409-10 (2012).

13.     Congress has created a comprehensive system of federal laws regulating and enforcing immigration in the Immigration and Nationality Act ("INA").  *See* 8 U.S.C. § 1101 *et seq*.

14.     Federal immigration statutes and the associated implementing regulations and precedential administrative law decisions form an exceptionally detailed, complex, and finely reticulated regulatory regime.  Congress has frequently amended the relevant provisions of the INA, including particularly significant legislation in 1952, 1965, 1980, 1986, 1990, 1996, 2000, 2001, 2005, and 2008, along with dozens of other Acts modifying the immigration regime in

countless ways.  Immigration legislation is proposed in every single Congress and frequently forms a point of major national debate.

15.     The INA was amended in 1980 by the Refugee Act, Pub. L. No. 96-21, to codify certain protections for those fleeing violence and danger.  Under U.S. law, every noncitizen "who is physically present in the United States or who arrives in the United States" has the right to apply for asylum, "whether or not" they enter at a port of entry.  8 U.S.C. § 1158(a)(1).

16.     Congress provided a range of other protections within the INA.  Consistent with international obligations, people cannot be removed to countries where they will face persecution, 8 U.S.C. § 1231(b)(3)(A), or torture, *id*. § 1231.  Likewise, Congress has provided various other forms of relief, including status for unaccompanied children, *id.* § 1101(a)(27)(J), trafficking victims, *id.* § 1101(a)(15)(T), and victims of crimes, *id.* § 1101(a)(15)(U).  All of these protections allow the federal government to permit a person who otherwise would have no legal status to avoid removal.

17.     The INA contains complex and exclusive procedures for determining immigration and citizenship status and for determining whether an individual may lawfully remain in the United States, either temporarily or permanently.  *See, e.g.*, 8 U.S.C. § 1229a(a)(3).  Under federal law, there is no single, readily ascertainable category or characteristic that establishes whether a particular person may or may not be permitted to remain in the United States.  The answer to that question can only be reached through the processes outlined in the INA and may depend on the discretionary determinations of federal officials.

18.     Many people who enter the United States between ports of entry ultimately obtain federal authorization to remain in the United States temporarily, indefinitely, or permanently.

5

19. Congress has provided various forms of relief from removal that are available to those who enter between ports of entry, including asylum, *id*. § 1158; withholding of removal and relief under the Convention Against Torture, *id*. § 1231(b)(3); and status (such as the "U visa") for victims of crime, trafficking, and domestic violence, *id*. §§ 1101(a)(15)(U), (T), 1182(a)(6)(A)(ii), (d)(13), (14).

20. Congress has established that entry into the United States is a crime under certain circumstances. 8 U.S.C. § 1325 ("Improper Entry by Alien") provides criminal penalties for noncitizens who, *inter alia*, enter the United States at any time or place other than as designated by immigration officers. 8 U.S.C. § 1326 provides criminal penalties for noncitizens who reenter the United States without authorization after entry of an order of removal. 8 U.S.C. § 1253 ("Penalties related to removal") provides criminal penalties for a failure to comply with a federal order of removal.

21. Congress also created specific procedures to remove individuals from the United States. These are generally called removal proceedings and can take multiple forms, including full removal proceedings, pursuant to 8 U.S.C. § 1229a; expedited removal proceedings, pursuant to 8 U.S.C. § 1225(b)(1); and reinstatement of removal proceedings, pursuant to 8 U.S.C. § 1231(a)(5). Each of these proceedings requires, at a minimum, notice and an opportunity to contest the grounds for removal, as well as an opportunity to raise humanitarian claims for protection from removal, including under the withholding of removal statute and the Convention Against Torture.

22. Under federal law, people are allowed to remain in the United States while administrative removal proceedings prescribed by the INA are pending.

23. Prosecution for the federal entry and reentry crimes, the decision to pursue the removal of a given person from the country, and the choice of which of the available removal

processes to invoke are matters of federal discretion.  Federal agents and policymakers may choose to deploy these tools—or not—for a wide range of reasons, including national priorities, migration patterns, international relationships, and humanitarian concerns.

**B.     S.B. 4**

24.     On December 18, 2023, Governor Abbott signed S.B. 4 into law.

25.     S.B. 4. creates three new state law offenses: Illegal Entry from Foreign Nation, Tex. Penal Code § 51.02; Illegal Reentry By Certain Aliens, *id.* § 51.03; and Refusal to Comply with [State] Order to Return to Foreign Nation, *id.* §51.04.

26.     Each of these offenses applies to a "person who is an alien," meaning any person who is not a citizen or national of the United States.

27.     S.B. 4 creates a new state judicial power to deport individuals from the United States.  Specifically, it authorizes state judges to "order [a defendant] to return to the foreign nation from which the person entered."  Tex. Code Crim. Pro. art. 5B.002.  S.B. 4 makes a "State Order to Return" a mandatory part of all judgments imposed for a conviction under the new illegal entry and reentry crimes.

28.     S.B. 4 creates a state crime of Illegal Entry ("State Illegal Entry"). Texas Penal Code § 51.02 ("State Illegal Entry") criminalizes a noncitizen's entry or attempt to enter into Texas directly from a foreign nation at any location other than a port of entry.

29.     S.B. 4 creates a state crime of Illegal Reentry ("State Illegal Reentry").  Texas Penal Code § 51.03 makes it a state crime if a noncitizen "enters, attempts to enter, or is at any time found in this state after the person: (1) has been denied admission to, excluded, deported, or removed from the United States; or (2) departed from the United States while an order of exclusion, deportation, or removal is outstanding."

30.    For purposes of State Illegal Reentry, S.B. 4 defines "removal" to include a state Order to Return to a foreign nation.

31.    S.B. 4 creates no affirmative defenses to a violation of State Illegal Reentry, such as a subsequent grant of lawful immigration status.

32.    State Illegal Reentry is punishable as a Class A misdemeanor.  Where an individual was previously removed subsequent to certain criminal convictions or based on certain criminal charges, a violation is punishable as a felony of the second or third degree, authorizing sentences of up to twenty years in prison.

33.    S.B. 4's removal provision amends the Texas Code of Criminal Procedure to require state magistrates and judges to issue a State Order to Return as part of the judgment for every conviction of State Illegal Reentry.

34.    A State Order to Return "takes effect on completion of the term of confinement or imprisonment imposed by the judgment" and requires a person to return to the foreign nation from which they entered or attempted to enter.  Tex. Code Crim. Proc. Art. 5B.002(d).

35.    Alternatively, a state magistrate or judge may enter a State Order to Return prior to a conviction for State Illegal Reentry in lieu of continuing the prosecution.  After making a determination that probable cause exists, a state magistrate or judge may issue an Order to Return if the individual agrees to the order and meets certain requirements.  Tex. Code Crim. Proc. Art. 5B.002(c).

36.    Texas Penal Code § 51.04 creates a third criminal offense: Refusal to Comply with Order to Return to Foreign Nation.

37.    Refusal to Comply with Order to Return to Foreign Nation is a felony of the second degree, punishable by between 2 and 20 years in prison.

38.     S.B. 4 provides no affirmative defense to a violation of § 51.04.

39.     S.B. 4 creates a new state system to regulate immigration that completely bypasses and conflicts with the federal system.  It allows state officers to unilaterally arrest, detain, and remove individuals from the United States and mandates removal orders for those who are convicted of the new state crimes of illegal entry and reentry.

40.     S.B. 4 requires state officers to make determinations of federal immigration status and to incarcerate and remove noncitizens pursuant to these determinations, but it does not provide noncitizens with any of the mechanisms or pathways to apply for or receive federal protection from removal.  Moreover, the statute prohibits state courts from pausing cases to obtain determinations of status from the federal government or abstaining while federal immigration proceedings take place.  *See* Tex. Code Crim. Proc. Ann. 5B.003.

41.     The State enacted S.B. 4 to bypass federal officials.  Indeed, the State enacted S.B. 4 to address a perceived lack of border enforcement by the federal government.

42.     In testimony before the Texas legislature in 2023, then-Director of Public Safety Steven McCraw stated that DPS estimates there could be approximately 72,000 arrests per year under the new law.

43.     Governor Greg Abbott has publicly stated that S.B. 4 was drafted "to be consistent with the dissent" in *Arizona v. United States*, 567 U.S. 387 (2012)—implicitly admitting that it is inconsistent with binding Supreme Court precedent.[1]

---

[1]  CBS Austin, *Gov. Greg Abbott Gives Opening Keynote Texas Public Policy Foundation Policy Summitt* (Mar. 20, 2024), https://www.youtube.com/watch?v=lL9SkIyv49U&t=4319s (~ 1:11:45).

44.    In separate litigation, S.B. 4 was enjoined in full before its effective date, and has remained enjoined (except for a period of hours on March 19, 2024) ever since. *United States v. Texas*, 97 F.4th 268, 274 (5th Cir. 2024).  The en banc Fifth Circuit recently held that the plaintiffs in that ligation lacked standing.  *United States v. Texas*, No. 24-50149, 2026 WL 1122127 (5th Cir. Apr. 24, 2026).  Its mandate is set to issue on May 15, 2026.

## CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of other persons similarly situated.

46.    Plaintiffs seek to represent the following class: All noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas after they have been denied admission to or excluded, deported, or removed from the United States, or after they have departed from the United States while an order of exclusion, deportation, or removal was outstanding.

47.    The proposed class satisfies the requirements of Rule 23(a)(1) because it is so numerous that joinder of all members is impracticable.  Hundreds if not thousands of noncitizens will be subjected to arrest, detention, and prosecution under S.B. 4 and its implementation by Defendant.  The proposed classes also include numerous future noncitizens who will enter Texas and will be subjected to S.B. 4.

48.    The class satisfies the commonality requirements of Rule 23(a)(2).  The members of the class are subject to the same policy; they all face the same harms of arrest, detention, and prosecution under S.B. 4; and they all have the same claim under the Supremacy Clause.

49.    The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the Plaintiffs are typical of the claims of the class.  Each proposed class member, including Plaintiffs, will face the same principal injury (arrest, detention, prosecution, and

10

removal), based on the same government practice (S.B. 4 and its implementation), which is unlawful as to the class because it violates the Supremacy Clause.

50.     The proposed class satisfies the adequacy requirements of Rule 23(a)(4).  Plaintiffs seek the same relief as the other class members: an order declaring S.B. 4's provisions unlawful and an injunction preventing their enforcement.  In defending their rights and the rights of their members, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

51.     The proposed classes are represented by experienced attorneys from the American Civil Liberties Union Foundation Immigrants' Rights Project, the American Civil Liberties Union Foundation of Texas, and the Texas Civil Rights Project.  Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens, including cases asserting very similar claims to the claims asserted here.

52.     The proposed class also satisfies Rule 23(b)(2).  Defendant will act on grounds generally applicable to the class by subjecting class members to arrest, detention, and prosecution under S.B. 4.  Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### Count One: Preemption (In Equity)

53.     The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

11

54.    Federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

55.    S.B. 4 violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority.

56.    S.B. 4 further violates the Supremacy Clause because it conflicts with federal laws, contradicts federal admission and release decisions, imposes burdens and penalties not authorized by and contrary to federal law, creates its own immigration classifications, and authorizes state officers to take unilateral immigration enforcement actions.

<b>PRAYER FOR RELIEF</b>

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.  Declare that Texas Penal Code §§ 51.03 and 51.04 and Tex. Code Crim. Proc. Ann. arts. 5B.002 and 5B.003 are unlawful;

b.  Preliminarily and permanently enjoin Defendant from enforcing Texas Penal Code §§ 51.03 and 51.04 and Tex. Code Crim. Proc. Ann. arts. 5B.002 and 5B.003; and

c.  Grant any other and further relief that this Court may deem fit and proper.

Dated: May 4, 2026

David A. Donatti (TX Bar No. 24097612)
Adriana C. Piñon (TX Bar No. 24089768)
Carolina Rivera Nelson (TX Bar No. 24132741)**
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org
criveranelson@aclutx.org

Daniel Hatoum
(TX Bar No. 24099136)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, TX 78516
(956) 787-8171 ext. 208
daniel@texascivilrightsproject.org

Kate Gibson Kumar
(TX Bar No. 24137588)
Daniel Woodward
(TX Bar No. 24138347)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
kate@texascivilrightsproject.org
danny@texascivilrightsproject.org

Dustin Rynders
(TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT
PO Box 1108
Houston, TX 77251-1108
dustin@texascivilrightsproject.org

/s/ *Cody Wofsy*
Cody Wofsy
Spencer Amdur
Hannah Steinberg*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (332) 220-1702
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org

Kathryn Huddleston*** (TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

Omar Jadwat*
Lee Gelernt
Grace Choi*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
lgelernt@aclu.org
gchoi@aclu.org

*Pro Hac Vice Application Forthcoming
** Application for Admission to Western District of Texas Pending
*** Application for Admission to Western District of Texas Forthcoming; barred in Texas and Arizona, not barred in the District of Columbia, practice supervised by a member of the D.C. Bar