**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

+

| | |
|---|---|
| L.M.L. AND K.G.S., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED,<br>    PLAINTIFFS,<br><br>V.<br><br>FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY,<br>    DEFENDANT. | CIVIL CASE NO. 1:26-CV-1170 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

1

TABLE OF CONTENTS

Defendant's Response in Opposition to  Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction......................................................................................................................1

Table of Contents................................................................................................................ 2

Table of Authorities ..........................................................................................................3

Introduction .......................................................................................................................3

Background .........................................................................................................................  4

I.      The Court Should Deny Any Request by Plaintiffs for a TRO. ..................................... 8

II.     The Court Should Deny Plaintiffs' Motion for Preliminary Injunction. .................. 9

    A.      Plaintiffs Have Not Shown a Substantial Likelihood of Succes on the Merits .... 9

    B.    Plaintiffs have failed to show a substantial threat of irreparable harm prior to a trial on the merits. .......................................................................................................................15

    C.    Plaintiffs Failed to Show that the Balance of Harms Tips in Their Favor.......................16

    D.      A Preliminary Injunction Would Disserve the Public Interest. ................................16

III.    The Court Should Defer Any Consideration of Plaintiffs' Motion for Class Certification or Dismiss that Motion.........................................................................................16

Conclusion .............................................................................................. **Error! Bookmark not defined.**

Conclusion .........................................................................................................................17

Certificate of Service .........................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U. S. 387 (2012) ...............................................................14

*Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024) .....................................................12

*Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). ................................12

*Funk v. Stryker Corp.*,

   631 F.3d 777 (5th Cir. 2011)..........................................................................................5

*Moody v. NetChoice, LLC*, 603 U. S. 707, 723 (2024) .....................................................14

*Novartis Pharms Corp. v. Fitch*, 2026 WL 963504 (5th Cir. Apr. 9, 2026)....................12

*United States v. Texas*,

   719 F. Supp. 3d 640 (W. D. Tex. 2024) ........................................................................7

*Washington State Grange v. Washington State Rep. Party*,

   552 U. S. 442 (2008)......................................................................................................14

*Washington State Grange v. Washington State Rep. Party*, 552 U. S. 442, 449 (2008) .................14

*Woodlands Pride, Inc. v. Paxton,* 168 F.4th 293, 307 (5th Cir. 2025) .............................14

*Zyla Life Sciences, LLC v. Wells Pharma. of Hous., LLC*, 134 F.4thv 326, 333-34 (5th Cir, 2025)

   ....................................................................................................................................12

**Statutes**

8 U. S. C. § 1326.................................................................................................................15

**Rules**

Fed. R. Evid. 201(b)..............................................................................................................5

## INTRODUCTION

Plaintiffs attack and seek to block enforcement of portions[1] of S. B. 4, legislation adopted by the Texas Legislature and signed into law by Texas Governor Abbott in 2023. The Plaintiffs seek to do so anonymously, and seek to do so through a pre-enforcement facial challenge. S. B. 4 has not yet gone into effect.[2] Plaintiffs do not allege that they have been prosecuted under any provisions of S. B. 4 or even have been threatened with any prosecution by Defendant.

## BACKGROUND[3]

On March 6, 2021, Governor Abbott announced Operation Lone Star to enhance the protection of Texas, its citizens, and its communities from illegal immigration and related adverse effects, including increased violent crime, drug smuggling, fentanyl overdoses and deaths, human trafficking.[4] Pursuant to Operation Lone Star, Governor Abbott directed and supported deployment of Texas Department of Public Safety personnel and the Texas Military Department (Texas National Guard) to defend Texas from the high levels of illegal immigration into Texas across its southern border. These personnel worked near the Texas

---

[1]     Plaintiffs moved only for injunctive relief against §§ 51.03 and 51.04 of Texas Penal Code and Tex. Code of Crim. Procedure articles 5B.002 and 5B.003. (ECF No. 3, at page 2).

[2]     The Court entered a preliminary injunction against enforcement of S. B. 4 in early March 2024 in another case, *Las Americas Imm. Ctr., et al. v. Martin*, Case No. 1:23-1537-DAE (W. D. Tex.). That preliminary injunction remains in force today. On April 24, 2026, the Fifth Circuit Court of Appeals en banc directed that the preliminary injunction be vacated. *United States v. Texas*, Case No. 24-50149 (5th Cir. April 24, 2026). However, the Fifth Circuit has not yet issued its mandate in that case.

[3] The sources cited throughout this Background section are public records that are easily verifiable ; this Court may take judicial notice of them. *See* Fed. R. Evid. 201(b); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving district court that "took appropriate judicial notice of publicly-available documents … which were matters of public record directly relevant to the issue at hand").

[4] Office of the Texas Governor, Press Release, *Governor Abbott, DPS Launch 'Operation Lone Star' to Address Crisis at Southern Border* (March 6, 2021), https://gov.texas.gov/news/post/governor-abbott-dps-launch-operation-lone-star-to-address-crisis-at-southern-border.

border with Mexico, but also in many other areas of Texas in which illegal immigrants were found.

Much was accomplished by Operation Lone Star, which was strongly supported by the Texas Legislature and the voters and communities of Texas. But the illegal immigration into Texas, trans-national crime activities in Texas, cartel activities and fentanyl deaths in Texas continued to increase. Governor Abbott repeatedly made demands for federal assistance under Article IV, Section 4 of the U.S. Constitution, which provides that the federal government "shall" protect constituent States from "Invasion" and "domestic Violence."[5] In November 2022, and after repeated demands for assistance went unanswered and "made clear that [the federal government] will not honor that guarantee" in Article IV, Section 4, Governor Abbott publicly declared that the unchecked entry of hostile foreign actors into Texas across its southern border constituted an invasion under Article I, Section 10, Clause 3 of the United States Constitution.[6]

Pursuant to that declaration, Governor Abbott increased the defensive activities of Operation Lone Star. Among other actions, Texas deployed floating barriers in the Rio Grande River near Eagle Pass, Texas in July 2023, and began construction of walls and other physical defenses against unlawful entry into Texas across the southern border by illegal

---

[5] *See* Office of the Texas Governor, Press Release, *Governor Abbott Sends Letter to U.S. Attorney General Merrick Garland Regarding Executive Order GA-37* (July 30, 2021), https://gov.texas.gov/news/post/governor-abbott-sends-letter-to-u.s-attorney-general-merrick-garland-regarding-executive-order-ga-37; Office of the Texas Governor, Press Release, *Governor Abbott Urges President Biden, Vice President Harris to Designate Mexican Drug Cartels as Foreign Terrorist Organizations* (Apr. 15, 2021), https://gov.texas.gov/news/post/governor-abbott-urges-president-biden-vice-president-harris-to-designate-mexican-drug-cartels-as-foreign-terrorist-organizations; Office of the Texas Governor, Press Release, *Governor Abbott Designates Mexican Cartels as Terrorist Organizations* (Sept. 21, 2022), https://gov.texas.gov/news/post/governor-abbott-designates-mexican-cartels-as-terrorist-organizations.

[6] Office of the Texas Governor, Press Release, *Governor Abbott to President Biden: Texas Is Escalating Border Security Efforts* (Nov. 16, 2022), https://gov.texas.gov/news/post/governor-abbott-to-president-biden-texas-is-escalating-border-security-efforts.

immigrants, cartel agents, drug smugglers, and human traffickers.[7] As part of that defense against invasion, Governor Abbott also supported a variety of proposed legislation in the Texas Legislature, including the law generally known as S. B. 4, parts of which are challenged in this case. S. B. 4 was strongly supported by Governor Abbott when it was before the Texas Legislature in 2023. Governor Greg Abbott signed S. B. 4 into law in December 2023.[8]

Governor Abbott, along with other defendants, was sued immediately thereafter in litigation seeking to block enforcement of that legislation. This Court entered a preliminary injunction against enforcement of S. B. 4 on or about February 29, 2024, shortly before S. B. 4 was scheduled to go into effect. *See United States v. Texas*, 719 F. Supp. 3d 640 (W. D. Tex. 2024) in Case Nos. 1:24-cv-8-DAE and 1:23-cv-1537-DAE. While that litigation played out, and despite the inability to enforce S. B. 4 in 2024, Governor Abbott, the Texas DPS, and the Texas National Guard continued to take historic action throughout that year under Operation Lone Star to secure the border.[9]

In January 2025, a new President of the United States was inaugurated. One of President Trump's first actions on January 20, 2025, was to sign Proclamation 10886.[10] The President thereby declared a National Emergency at the southern border of the United States and stated, "America's sovereignty is under attack." The President then stated clearly: "This invasion has caused widespread chaos and suffering in our country. Over the last 4 years, it has led to the horrific and inexcusable murders of many innocent Americans, including

---

[7] *See, e.g.*, Office of the Texas Governor, Press Release, *Governor Abbott Signs Sweeping Package of Border Security Legislation* (June 8, 2023), https://gov.texas.gov/news/post/governor-abbott-signs-sweeping-package-of-border-security-legislation.

[8] *See* Office of the Texas Governor, Press Release, *Governor Abbott Signs Historic Border Security Measures in Brownsville* (Dec. 18, 2023), https://gov.texas.gov/news/post/governor-abbott-signs-historic-border-security-measures-in-brownsville.

[9] Office of the Texas Governor, Press Release, *Texas Holds the Line Against Border Crisis Throughout 2024* (Dec. 23, 2024), https://gov.texas.gov/news/post/texas-holds-the-line-against-border-crisis-throughout-2024.

[10] *See* 90 FR 8327 (Jan. 29, 2025).

women and children, at the hands of illegal aliens." President Trump on January 20, 2025, also signed an Executive Order entitled "Protecting the American People Against Invasion." President Trump also signed and issued Proclamation 10888. In it, the President stated in part: "By the power vested in me by the Constitution and the laws of the United States, I have determined that the current situation at the southern border qualifies as an invasion under Article IV, Section 4 of the Constitution of the United States."

Also in January 2025, Governor Abbott signed five Executive Orders directing Texas state agencies to assist the United States in more effectively enforcing the federal immigration laws.[11] Governor Abbott stated: "Today, I issued five Executive Orders directing Texas state agencies to partner with the Trump Administration to enforce the rule of law and help secure the homeland. Just like President Trump and his Administration, Texas will do what is necessary to keep our country safe."

Since January 2025, Texas state agencies have worked cooperatively and successfully with United States Border Patrol and other federal law enforcement personnel to defend the Texas southern border and enforce federal immigration laws. Even greater success can and likely will be achieved if S. B. 4 is allowed to go into effect and is fully implemented. 12. By contrast, the harm to the State of Texas, its citizens, and its communities from injunctive relief that blocks enforcement of S. B. 4, including both preliminary and permanent injunctive relief, would substantially outweigh any possible harm to Plaintiffs (including any harm to putative class members) from denying such injunctive relief.

---

[11] Office of the Texas Governor, Press Release, *Governor Abbott Directs State Agencies to Coordinate with Trump Administration on Border, Homeland Security* (Jan. 29, 2025), https://gov.texas.gov/news/post/governor-abbott-directs-state-agencies-to-coordinate-with-trump-administration-on-border-homeland-security.

Since this Court last faced this issue, it is clear that federal and state actors have been actively collaborating to address the harms posed by illegal and unchecked immigration. A preliminary or permanent injunction sought by Plaintiffs against enforcement of S. B. 4 would not only undermine those collaborative efforts, which make a poor case for preemption, but also substantially deserve the public interest in enforcement of the federal immigration laws, and in protecting the citizens and communities of Texas and the United States from the adverse effects of illegal immigration into Texas and other States. These adverse effects include increased violent crime, cartel activities, drug smuggling, human trafficking, fentanyl deaths, and the wide variety of costs illegal immigration imposes on Texas and its citizens.

## I.    The Court Should Deny Any Request by Plaintiffs for a TRO.

Plaintiffs on May 4, 2026, filed this action. They filed an unverified Complaint for Declaratory and Injunctive Relief. (ECF No. 1), alleging only a single claim for "Preemption (In Equity)". *Id.* at ¶¶ 53-56. The Plaintiffs seek only declaratory relief and that the Court "preliminarily and permanently enjoin Defendant from enforcing [S. B. 4]". The Complaint does not seek a temporary restraining order ("TRO"), either in the body of the Complaint or in its prayer. See ECF No. 1 at 11-12.

Plaintiffs nevertheless filed a "Motion for Temporary Restraining Order and Preliminary Injunction" against Defendant Martin on May 4, 2026. (ECF No. 3). Plaintiffs' Motion is unsworn and does not include any allegation that, absent a TRO, any Plaintiff is likely to suffer irreparable harm prior to the time a hearing can be held on the motion for preliminary injunction. Moreover, Plaintiffs in the prayer of that Motion do not seek any TRO. For these reasons, and because the Court has ordered a hearing on May 13 on Plaintiffs'

8

motion for preliminary injunction, Plaintiffs' motion for a TRO is moot as well as without merit and should be denied.

## II. The Court Should Deny Plaintiffs' Motion for Preliminary Injunction.

A preliminary injunction is an "extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries his burden of persuasion." *White v. Carlucci*, 862 F. 2d 1209, 1211 (5th Cir. 1989). A federal court preliminary injunction that would block a democratically enacted state law from going into effect is especially drastic and extraordinary because it violates principles of federalism and thwarts the rights of a sovereign state to protect its people and communities. Plaintiffs have made no showing that could justify such a remedy.

In order to obtain a preliminary injunction, an applicant is required to show:

   A. A substantial likelihood of success on the merits;

   B. A substantial threat of immediate and irreparable harm prior to the time a trial can be had;

   C. That the threatened injury if the preliminary injunction is denied outweighs any harms that will result if the preliminary injunction is granted; and

   D. That the preliminary injunction will not disserve the public interest.

*See Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015); *Anderson v. Jackson*, 558 F.3d 351, 360 (5th Cir. 2009).

### A.    Plaintiffs Have Not Shown a Substantial Likelihood of Succes on the Merits

Plaintiffs fail to show a substantial likelihood of access on the merits for numerous reasons. First, the District Court lacks subject matter jurisdiction of this case. Defendant Martin has filed contemporaneously herewith his Motion to Dismiss for Lack of Subject

9

Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) herein. Defendant Martin hereby incorporates that Motion by reference, but briefly summarizes why subject matter jurisdiction is absent.

Plaintiffs (and the members of the putative class they seek to represent) lack standing to bring this pre-enforcement facial challenge before S. B. 4 has gone into effect. They have suffered no injury in fact from any actions of Defendant Martin. They have no "concrete and particularized" and "actual or imminent" injury from any enforcement of S. B. 4 by Defendant, but only a speculative fear that such enforcement may someday occur. That is insufficient for standing.

Defendant Martin has sovereign immunity from suit and from Plaintiffs' claims in this case and hereby asserts such sovereign immunity. This action also is barred by the Eleventh Amendment to the United States Constitution. Plaintiffs have failed to allege or show any thing more than pure speculation that Defendant Martin will implement S. B. 4 in a manner that violates the Constitution. Defendant Martin, himself, not yet determined what operational steps DPS will take to enforce S. B. 4. *See* Martin Decl. ¶ 4. *See National Press Phot. Ass'n v. McCraw*, 90 F.4th 770, 786-87 (5th Cir. 2024). Because sovereign immunity deprives a court of subject matter jurisdiction, this action must be dismissed, and Plaintiff cannot show a substantial likelihood of success.

Texas enacted S. B. 4 as part of its defense against actual invasion across Texas's southern border as determined by Texas Governor Abbott and confirmed by the President of the United States. S. B. 4 is therefore consistent with and authorized by the U. S. Constitution, art. 1, Section 10. Thus, any claim that S. B. 4 is preempted by federal statutes both presents a non-justiciable political question and is legally invalid. For this additional reason, this Court

lacks jurisdiction of this action under Article III and Plaintiffs cannot show a likelihood of success on the merits

Plaintiffs claim int this case also is substantively defective and they cannot show a likelihood of success on the merits for this additional reason. Plaintiffs' only claim is not based on any constitutional or statutory rights they have, but solely on their discredited interpretation of the Supremacy Clause. Courts evaluating preemption claims as to state laws enacted to protect public safety or health or in support of other traditional state police powers must recognize and apply a presumption against preemption. *AbbVie, Inc. v. Murrill*, 166 F.4th 528, 539 (5th Cir. 2026); *Franks Inv. Co., LLC v. Union Pac. R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc). S. B. 4 is such a state law enacted to protect the public safety of the citizens and communities of Texas from the extensive adverse effects of illegal immigration. *See* Decl. of Freeman Martin ¶ 7.

The presumption against preemption applicable here can be rebutted, but only by "clear and manifest congressional intent to displace state law." *Novartis Pharms Corp. v. Fitch*, 2026 WL 963504 (5th Cir. Apr. 9, 2026), quoting *Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024). "Congressional intent is the ultimate touchstone." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Here, Plaintiffs can point to no "clear and support and manifest congressional intent to displace state laws" like S. B. 4, that supplement and parallel federal laws.

The Fifth Circuit recognized in *Zyla Life Sciences, LLC v. Wells Pharma. of Hous., LLC*, 134 F.4thv 326, 333-34 (5th Cir, 2025). that states may have a legitimate interest in punishing or providing redress for wrongs even if federal law has already done so. Parallel state and federal regulations or prohibitions are familiar and permissible under the Supremacy Clause

11

unless there is an expression of Constitutional or Congressional intent to the contrary – and that plainly is not present as to S. B. 4.

Neither the Constitution, nor Congress in the Immigration and Nationality Act (INA), forbade sovereign states from helping to enforce federal immigration laws by enacting state criminal laws that parallel their federal counterparts. To the contrary, the federal immigration laws provide for the cooperation of state law enforcement to assist with enforcement of the federal immigration laws. Nowhere do Plaintiffs point to any Congressional language in the INA or elsewhere that forbids States from passing laws like S. B. 4.

The United States and Texas (through the Texas Department of Public Safety (DPS) and other agencies) currently cooperate in the enforcement of federal immigration laws in Texas on a daily basis. *See* Martin Decl. ¶¶ 5-7. Together, the United States and Texas have since the beginning of 2025 achieved the highest level of Texas border security in recorded history through that collaboration. *Id*. ¶7.

These facts belie Plaintiffs' contentions that the field of immigration is one in which federal law preempts the field. For this reason, the United States itself has made it clear that S. B. is *not field-preempted*.

> The regulation of those unlawfully in the United States is not one of those rare cases in which Congress intended to occupy the field to the exclusion of state legislation (like S. B. 4) that supplements and reinforces federal law.

Brief for the United States as *Amicus Curiae* Supporting Appellants, *United States v. Texas*, Case No. 24-50149 (ECF No. 375-1, at 13). The United States specifically disagreed with Plaintiffs'

central argument here that field preemption of S. B. 4 is supported, if not mandated, by *Arizona v. United States*, 567 U. S. 387 (2012). *Id.* at 14-18.

Moreover, the United States has persuasively argued that S. B. 4 properly construed does not conflict with the federal immigration laws that S. B 4 largely mirrors. "There is no dispute that it is 'possible' for Plaintiffs to comply with both federal law and Senate Bill 4." *Id*. at 19. "At a minimum, S. B. 4 does not conflict with federal law on its face – such that 'no set of circumstances exists under which the Act would be valid' and the law is 'unconstitutional in all its applications.'" *Washington State Grange v. Washington State Rep. Party*, 552 U. S. 442, 449 (2008) (*quoting United States v. Salerno*, 481 U. S. 739, 745 (1987)). The United States concluded: "Texas's law [S. B. 4] is in harmony, not in conflict, with federal law." *Id*. at 19.

Plaintiffs have chosen to mount a facial pre-enforcement challenge to S. B. 4. But the Supreme Court and the Fifth Circuit have cautioned that such challenges are "hard to win." They inevitably require speculation as to how a state law will be enforced and short circuit the democratic process. *See, e. g., Moody v. NetChoice, LLC*, 603 U. S. 707, 723 (2024); *Woodlands Pride, Inc. v. Paxton,* 168 F.4th 293, 307 (5th Cir. 2025). Moreover, a plaintiff cannot carry its burden even in a First Amendment facial challenge without showing that the challenged statute's unconstitutional applications substantially outweigh its constitutional applications. *Id*. But this is *not* a First Amendment facial challenge, so Plaintiffs were required to show that "no set of circumstances exists under which the Act would be valid" and that S. B. 4 is "unconstitutional in all its applications."

Plaintiffs here have not even attempted to meet that heavy burden and could not do so in any event. As one example, consider a previously deported cartel drug smuggler who

13

surreptitiously enters Texas between ports of entry with a cargo of meth and fentanyl. The drug smuggler (a member of the purported class Plaintiffs seek to certify here) thereby violates both 8 U. S. C. § 1326 and S. B. 4 (as well as various parallel federal and Texas laws against drug smuggling). If a Texas DPS officer were to apprehend the smuggler in Texas pursuant to S. B. 4, that would in no way conflict with federal immigration law and would in fact undeniably advance the goals of 8 U. S. C. § 1326. Federal immigration officials may (but are not required to) file a detainer with Texas authorities to ensure that the drug smuggler can be charged for his federal immigration and drug crimes as well.

The result in this very plausible example would be one less illegal alien on the streets of Texas who has violated (on multiple occasions) federal immigration laws and increased public safety for the citizens and communities of Texas. Plaintiffs have not shown and cannot show why that example represents a violation of the Supremacy Clause of the United States Constitution. The DPS Officer, by enforcing S. B. 4, has not acted in a manner contrary to or in conflict with the letter or spirit of the federal immigration laws, but only in support of the goals of those laws. Accordingly, Plaintiffs cannot meet the requirement that they show the challenged state law "is unconstitutional in all its applications" and that 'no set of circumstances exists under which the Act would be valid'.[12]

This dooms the facial pre-enforcement challenge they chose to bring. Thus, they have not shown the substantial likelihood of success on the merits required for a preliminary injunction for that additional reason.

It is apparent that S. B. 4's provisions regarding arrest of illegal aliens found in Texas and criminal liability of such illegal aliens do not conflict with the parallel federal immigration

---

[12]   As another example, consider an illegal alien who voluntarily agrees to abide by a removal order under S. B. 4 (especially § 52.02); in that instance. there could be no possible conflict with federal immigration laws.

law provisions that they supplement. Thus, most of the arguments Plaintiffs make pertain to the provisions of S. B. 4 regarding removals from the United States. But neither Plaintiffs nor anyone else will be subject to removal from the United States pursuant to S. B. 4 for a substantial period of time. That is because S. B. 4 provides for such removals only after a person has been charged, tried, and convicted of violating S. B. 4 and has served any sentence for such conviction (or has consented to such removal). Thus, there obviously is no "imminent" threat of removal of Plaintiffs (or any other violators of the laws against illegal re-entry into the United States after deportation) prior to the time a trial can be had in this case. A preliminary injunction thus would be inappropriate. For all these reasons, Plaintiffs have failed to show that they have a substantial likelihood of success on the merits.

## B.    Plaintiffs have failed to show a substantial threat of irreparable harm prior to a trial on the merits.

Plaintiffs have made no effort whatsoever to show that they are subject to a "substantial" threat of irreparable harm from enforcement of S. B. 4 against them, especially prior to the time a trial of this case can occur. They offer zero evidence that Defendant Martin or the Texas DPS have threatened such enforcement against any Plaintiffs (or purported class members), or that the Department even knows who Plaintiffs are. *See* Martin Decl. ¶ 4.

Instead, Plaintiffs assert only a substantial and speculative "fear" that they might be prosecuted under S.B. 4 by "local law enforcement officials." But it is indisputable that Defendant Martin is *not* a "local law enforcement official." *See* Martin Decl. ¶ 2. Thus, even Plaintiff's speculative fears are directed elsewhere than at Defendant Martin. This failure by Plaintiffs to carry the burden that is theirs on a motion for a preliminary injunction further requires denial of their motion.

15

####       C.       Plaintiffs Failed to Show that the Balance of Harms Tips in Their Favor.

Similarly, Plaintiffs have made no attempt to show that the burden to Plaintiffs if a preliminary injunction is denied outweighs the harm to Texas if a preliminary injunction is granted. Had they made any attempt to carry their burden on this element, they could not have done so. Because S. B. 4 is not even in effect and Plaintiffs are unknown to DPS, the harm to Plaintiffs if a preliminary injunction is denied is entirely speculative and unlikely in the short period before a trial can occur. *See* Martin Decl. ¶ 4. But a preliminary injunction would further frustrate the democratic process in Texas and the right of Texas to make and enforce its own laws. Such a preliminary injunction would prevent enforcement of S. B. 4 to protect the citizens of Texas.

####       D.       A Preliminary Injunction Would Disserve the Public Interest.

That latter interest is undeniably an important part of the public interest at stake in this case. Texas voters have consistently supported strong enforcement of federal and state laws that would reduce the harms to Texas associated with illegal immigration. The Fifth Circuit recently detailed the damage that Texas and its people have suffered as a result of unchecked illegal immigration. A preliminary injunction further blocking the enforcement of S. B. 4, adopted by the Texas Legislature to combat and deter illegal immigration into Texas, would dramatically disserve the public interest.

### III. The Court Should Defer Any Consideration of Plaintiffs' Motion for Class Certification or Dismiss that Motion.

Defendant Martin timely requested reasonable discovery of Plaintiffs as proposed class representatives. Plaintiffs refused to provide any such discovery in the foreseeable future. This refusal precludes discovery of facts essential to any class certification for the reasons set forth in the Response in Opposition to Motion for Class Certification filed

contemporaneously herewith. Defendant Martin hereby incorporates such Response by reference.

**CONCLUSION**

The Court should deny Plaintiffs' motion for a preliminary injunction as well as their motion for a TRO.[13] Because the Court lacks subject matter jurisdiction, the Court should also dismiss this action.

Date: May 8, 2026

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

*s/ David Bryant*
DAVID BRYANT
Senior Special Counsel
Attorney in Charge
Texas Bar No. 03281500

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ALEXIA BAKER
Assistant Attorney General
Texas Bar No.24149596

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
SPECIAL LITIGATION DIVISION
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

COUNSEL FOR DEFENDANT FREEMAN MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY

---

[13] In the event that, despite the foregoing, the Court grants any injunctive relief against enforcement of any portion of S. B. 4, Defendant respectfully requests that the Court stay any such injunctive relief pending appeal by Defendant.

**CERTIFICATE OF SERVICE**

I certify that on May 8, 2026, a true and accurate copy of the foregoing document was filed electronically in the above action using the District Court CM/ECF system.

_s/ David Bryant_
David Bryant

18