**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

L.M.L., *et al.*,

        *Plaintiffs*,

        v.

FREEMAN F. MARTIN, in his official capacity as the Director of the State of Texas Department of Public Safety,

        *Defendant*.

Case No. 1:26-cv-1170-DAE

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

This Court previously and correctly held that S.B. 4 is both field and conflict preempted. To avoid the obvious conclusion that it should be enjoined here, Defendant has submitted a flurry of filings and contentions, but all of them lack merit. Ultimately, the reality is inescapable: Texas has enacted its own immigration scheme, and the Supremacy Clause does not permit its enforcement.

Defendant's Amended Response in Opposition, Dkt # 29 ("TRO Opp.") to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Dkt # 3 ("TRO Mot."), fails to rebut that conclusion. Plaintiffs have clear standing to challenge S.B. 4. *See* Dkt # 13 (directing parties to include arguments as to standing). Both Plaintiffs are amenable to prosecution under S.B. 4—which Defendant does not contest. Instead, as to both standing and *Ex Parte Young*, Defendant's core argument is that there has been no specific threat of enforcement against these specific individuals. But that has never been required, and, far from disclaiming an intent to enforce S.B. 4, Defendant has now repeatedly indicated he will do so. Plaintiffs need not wait until they are arrested to challenge this unconstitutional scheme.

Defendants' remaining arguments were already rejected by this Court in its thorough prior opinion, which analyzed the merits and equities. *United States v. Texas*, 719 F. Supp. 3d 640 (W.D. Tex. 2024), *vacated on other grounds*, No. 24-50149, 2026 WL 1122127 (5th Cir. Apr. 24, 2026) (en banc). The Court should enjoin S.B. 4.

## I.      PLAINTIFFS HAVE STANDING.

Plaintiffs demonstrate an injury-in-fact because (1) they have "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) their intended future conduct is "arguably . . . proscribed by the statute," and (3) "the threat of future enforcement . . .

is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160-64 (2014) (citation modified).

1. Plaintiffs assert an intent "to engage in a course of conduct arguably affected with a constitutional interest." *Id.* at 160 (citation modified). Indeed, Defendant does not contend otherwise. In preemption cases and others, individuals regularly vindicate their own "constitutional interest" in the Constitution's principles of federalism. *Bond v. United States*, 564 U.S. 211, 220, 225-26 (2011); *see also Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) ("federalism principles" provided arguable constitutional interest for standing); *United States v. Texas*, 794 F. Supp. 3d 427, 442-44 (W.D. Tex. 2025) ("the structural protection of federalism embodied in the Supremacy Clause" provides an individual constitutional interest); *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 914 (8th Cir. 2025) (similar). Accordingly, numerous federal courts have found that individuals challenging laws similar to S.B. 4 on preemption grounds have a constitutional interest. *Iowa Migrant Movement for Just.*, 157 F.4th at 914; *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1032-33 (D. Idaho 2025); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1255-56 (S.D. Fla. 2025); *Padres Unidos de Tulsa v. Drummond*, 783 F. Supp. 3d 1324, 1342-43 (W.D. Okla. 2025).

2. Likewise, the Plaintiffs' conduct is at a minimum "arguably . . . proscribed by [the] statute[.]" *Susan B. Anthony List*, 573 U.S. at 162. S.B. 4 makes it a crime for "an alien" to be "at any time found in" Texas "after the person . . . has been denied admission to or excluded, deported, or removed from the United States," or "has departed from the United States while an order of exclusion, deportation, or removal is outstanding." Tex. Penal Code § 51.03(a). Plaintiffs can each be "found in" Texas after reentering the United States without authorization. L.M.L. Decl.

¶¶ 3, 5-6; K.G.S. Decl. ¶¶ 3, 5-6.  Accordingly, their conduct is "arguably . . . proscribed" by the statute.

While Defendant points to certain aspects of the Plaintiffs' circumstances to contest class certification, he correctly does not contest that the Plaintiffs are amenable to prosecution under S.B. 4.  For example, that Plaintiff L.M.L. is a lawful permanent resident does not immunize him from state prosecution.  L.M.L. is an "alien" under S.B. 4; the statute incorporates the definition of "alien" in 8 U.S.C. § 1101, which includes lawful permanent residents.  *See* Tex. Penal Code § 51.01(1); 8 U.S.C. § 1101(a)(3), (a)(20).  And, unlike S.B. 4's *entry* crime, the *reentry* provision provides no defenses, including for lawful permanent residents.  *Compare* Tex. Penal Code § 51.03 (no affirmative defenses) *with* Tex. Penal Code § 51.02(c) (providing affirmative defenses for, *inter alia*, lawful presence and asylum).  Under the "plain terms" of the statute, *Book People, Inc. v. Wong*, 91 F.4th 318, 330 (5th Cir. 2024), L.M.L. may be prosecuted despite his lawful permanent residence, *see Iowa Migrant Movement for Just.*, 157 F.4th at 913-16 (holding that lawful permanent residents had standing to challenge Iowa's almost identical provision).

Likewise, Plaintiff K.G.S.'s conduct is arguably proscribed by S.B. 4.  She departed the United States, a removal order was subsequently issued, and she then reentered.  K.G.S. Decl. ¶¶ 5-6.  The Fifth Circuit has previously held that an individual in those circumstances may be prosecuted and convicted under 8 U.S.C. § 1326, the federal illegal reentry statute.  *See United States v. Ramirez-Carcamo*, 559 F.3d 384, 389-90 (5th Cir. 2009) (holding that "aliens do not avoid prosecution under Section 1326 by . . . departing in advance of the removal order").  Section 1326 was the model for S.B. 4's reentry crime, as Texas concedes.  *See* TRO Opp. 13-14; Brief for Appellants at 6, *United States v. Texas*, No. 24-50149 (5th Cir. filed Mar. 13, 2024) (asserting that S.B. 4 "track[s] federal immigration crimes prohibiting unlawful entry and reentry");

3

Supplemental Brief for Appellants at 4-5, *United States v. Texas*, No. 24-50149 (5th Cir. filed Oct. 13, 2025) (similar).  Accordingly, it is at least arguable that K.G.S. may be prosecuted under S.B. 4.  *See, e.g.*, *In re Westcap Enters.*, 230 F.3d 717, 726 (5th Cir. 2000) ("Because the Texas Securities Act is so similar to the federal Securities Exchange Act, Texas courts look to decisions of the federal courts to aid in the interpretation of the Texas Act.") (citation modified); *Long v. State*, 535 S.W.3d 511, 523-25 (Tex. Crim. App. 2017) (reviewing cases on federal wiretap statute to interpret state wiretap statute, which "generally follows the provisions of [the federal statute]") (citation modified).

3. Finally, Plaintiffs face a credible threat of enforcement.  The Texas Department of Public Safety has consistently indicated that it intends to enforce S.B. 4.  Defendant's predecessor stated that enforcement would be on a massive scale, predicting up to 80,000 arrests under the statute. *United States v. Texas*, 144 F.4th 632, 652 (5th Cir.), *reh'g en banc granted, opinion vacated,* 150 F.4th 656 (5th Cir. 2025), and *on reh'g en banc,* No. 24-50149, 2026 WL 1122127 (5th Cir. Apr. 24, 2026); *see also Texas*, 719 F. Supp. 3d at 659 (estimating 8,000 arrests in El Paso County alone).  This Court rightly concluded in earlier litigation that DPS had "demonstrated a clear willingness to enforce SB 4." *Texas*, 719 F. Supp. 3d at 661.

Defendant contends that his predecessor's statement about massive enforcement does not show a threat of enforcement.  *See* TRO Opp. 15; Def's Priority Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. # 25 ("MTD") 6 & n.2.  But he does not disclaim enforcement. To the contrary, Defendant has repeatedly indicated his intention to enforce S.B. 4.  For example, in a brief submitted to the Fifth Circuit after he was substituted into the case as a defendant, he emphasized what he perceives to be the benefits of "[e]nforcement of S.B.4," and cited plans for DPS's enforcement of the law.  Supplemental Brief for Appellants at 23-24, 49, *United States v.*

4

*Texas*, No. 24-50149 5th Cir. Oct. 13, 2025).  Likewise, he now asserts that "[e]ven greater success" in achieving the State's immigration policy goals "can and likely will be achieved if S.B. 4 is allowed to go into effect and is fully implemented."  TRO Opp. 7; *see also id.* at 10 (not disclaiming an intent to "implement S. B. 4").  Indeed, his declaration confirms that "DPS will take steps to enforce S. B. 4."  Martin Decl. ¶ 4.  That he has "not yet . . . determined what those operational steps will be," *id.*, does not remotely undermine his demonstrated willingness to enforce the law.

That is more than enough to establish standing.  Plaintiffs "established they have engaged in (and will continue to engage in) conduct" arguably prohibited by S.B. 4.  *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 289 (5th Cir. 2025).  And Defendant "has not disavowed" enforcing the statute "for that behavior, so a credible threat of prosecution exists."  *Id.*; *see Iowa Migrant Movement for Just.*, 157 F.4th at 915 (similar).[1]

## II.   DEFENDANT IS NOT ENTITLED TO SOVEREIGN IMMUNITY.

For similar reasons, Defendant is not entitled to sovereign immunity.  TRO Opp. 10; MTD 5-7.  As this Court previously observed, a "'scintilla of enforcement by the relevant state official with respect to the challenged law' will do."  *Texas*, 719 F. Supp. 3d at 661 (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)).  As already explained, that is amply satisfied here.

---

[1] In his motion to dismiss, Defendant separately contests Plaintiffs' standing to challenge S.B. 4's removal provision, Tex. Code of Crim. Proc. art. 5B.002.  MTD 4.  That is baseless.  While supposedly voluntary acceptance of a state removal order requires certain "conditions," *id.*, such as lack of other charges, *see* art. 5B.002(c), upon conviction "the judge shall" enter such an order— without any conditions, *see id.* art. 5B.002(d).  As for article 5B.003, the abatement provision, *see* MTD 5 n.1, "a federal determination regarding the immigration status of [K.G.S.] is pending."  Art. 5B.003.  *See* USCIS, Policy Manual, Vol. 3, Part C, Ch. 4, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-4 (describing the U-visa process).  K.G.S. has not yet been granted a visa.  Her petition has been prima facie approved; final approval and issuance will await the availability of a visa. *See* USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5.

In response, Texas relies on *National Press Photographers Association v. McCraw*, 90 F.4th 770 (5th Cir. 2024). But that unusual case involved a longstanding statute that had "never" been enforced in the decade that it had been on the books. *Id*. at 786. Here, there is no such statutory "moribundity," nor are there any "persuasive representations of its nonenforcement." *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 397 (5th Cir. 2025) (discussing *Nat'l Press Photographers*); *see La Union Del Pueblo Entero*, 151 F.4th at 289 (emphasizing that the defendant "has not disavowed" enforcement). And, as *National Press Photographers* itself recognized, as DPS Director the Defendant has "more than just the general duty to see that the state's laws are implemented—[he is] *directly* responsible for enforcing Texas's criminal laws." 90 F.4th at 786. Sovereign immunity is therefore inapplicable.[2]

### III.    THIS COURT HAS ALREADY DECIDED THE MERITS.

On the merits, Defendant recycles arguments this Court already considered and rejected. Defendant invokes the presumption against preemption, TRO Opp. 11, but "an 'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). That is undisputably the case here, as several courts have found. *See Iowa Migrant Movement for Just.*, 157 F.4th at 919 (explaining "immigration is not a traditional subject of state regulation"); *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) (no "presumption against preemption applies" to an "attempt to regulate immigration"); *Lozano v. City of Hazleton*, 724 F.3d 297, 314

---

[2] Defendant suggests that *Ex Parte Young*'s exception to sovereign immunity in not available until "the challenged statute has . . . taken effect." MTD 6. That is incorrect. *See, e.g.*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 35, 45 (2021) (plurality opinion); *id*. at 59-60 (Roberts, C.J., concurring in the judgment in part) ("As eight Members of the Court agree, petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under *Ex parte Young*") (citation omitted); *see also Healthy Vision Ass'n*, 138 F.4th at 397-98.

n.23 (3d Cir. 2013) (similar).  By contrast, *AbbVie, Inc. v. Murrill*, on which Defendant relies, involved "[p]ublic health and consumer protection," and merely "touch[ed]" on a federal program. 166 F.4th 528, 539 (5th Cir. 2026).

According to Defendant, states may enact criminal laws that parallel federal law.  TRO Opp. 12.  But as this Court observed, 719 F. Supp. 3d at 667, this is not true where, as here, the state is regulating in a preempted field, since field preemption forecloses even parallel state laws. Likewise, whatever may be permissible in the context of other crimes, here S.B. 4 conflicts with Congress's extensive regulatory regime.  *Iowa Migrant Movement for Just.*, 157 F.4th at 922 (specifically distinguishing *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326 (5th Cir. 2025), on which Defendant relies).

Defendant also invokes cooperation between the federal government and Texas, TRO Opp. 12, but as this Court explained, federal-state cooperation in immigration enforcement is governed by 8 U.S.C. § 1357(g), which "retain[s] ultimate monitoring and implementation control for the federal government" due to the "'significant complexities involved in enforcing federal immigration law.'"  719 F. Supp. 3d at 677 (quoting *Arizona v. United States*, 567 U.S. 387, 409 (2012)).  "'[N]o coherent understanding' of 'cooperation' would 'incorporate the unilateral decision of state officers to arrest [a noncitizen] for being removable absent any request, approval, or other instruction from the Federal Government.'"  *Id.* (quoting *Arizona*, 567 U.S. at 410).

Defendant invokes the "burden" required "to mount a facial pre-enforcement challenge," TRO Opp. 13, but ignores the fact that, where, as here, a law is field preempted, every application of that law is preempted.  *See Arizona*, 567 U.S. at 401 ("Where Congress occupies an entire field . . . even complementary state regulation is impermissible.").  Even as to conflict preemption, every time the State enforces S.B. 4, it flouts Congress's direction that executive officials exercise

7

discretion to decide which tools to use to address irregular entries.[3]  Thus, "every application of the Act stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Iowa Migrant Movement for Just.*, 157 F.4th at 927.[4]

Defendant invokes the views expressed by the Department of Justice in an amicus brief supporting parts of S.B. 4.  TRO Opp. 12-13.  "But the Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Iowa Migrant Movement for Just.*, 157 F.4th at 924 (rejecting reliance on similar amicus brief) (some internal quotation marks omitted).  "Congress gives discretion to federal officials in enforcing federal immigration law, with limited opportunities for the involvement of states." *Id.* "Because the Act conflicts with the discretion that Congress gives to federal officials, the Act is preempted, even if federal officials support the Act." *Id.*[5]

Finally, Defendant reprises the State's claim that S.B. 4 is authorized as a "defense against actual invasion," and that this assertion renders the case non-justiciable.  TRO Opp. 10.  This Court

---

[3] Defendant claims that Plaintiffs "base their argument" on S.B. 4's failure to include the exception under federal law for a person who reenters with the federal government's permission.  MTD 3. That is in fact just one of many conflicts between S.B. 4 and federal law.

[4] Defendant posits a hypothetical enforcement against a "cartel drug smuggler."  TRO Opp. 13-14. Texas may of course enforce its drug crimes; that does not make it lawful for the state to establish and apply its own immigration statutes.  Texas next objects that S.B. 4 is lawful when noncitizens "voluntarily agree[]" to leave the country.  TRO Opp 14 n.12.  But any state deportation orders intrude into an exclusively federal field.  Moreover, it is myopic to suggest Texas's "voluntary" scheme is either truly voluntary or consistent with federal law.  Under S.B.4, noncitizens are faced with criminal prosecution and a sentence, followed by a mandatory state deportation order, and then offered the "opportunity" to instead avoid the punishment and immediately take that same deportation order.  That is, these supposedly "voluntary" choices are predicated on Texas dictating that a person must leave the country either way.  *Texas*, 2026 WL 1122127, at *67 (Richman, J., dissenting).  A starker conflict is hard to imagine.

[5] The "views" of "an Executive Branch agency" do not control the meaning of Congress's statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).  That is particularly so because the amicus brief submitted by the Department of Justice is an abrupt reversal from the position it took previously in challenges to S.B. 4 and related laws—a fact it never explains.  *See id.* at 386 ("respect" for "consistent" views).

previously rejected that argument.  719 F. Supp. 3d at 679-95.  Nor can statements from the President immunize S.B. 4 from judicial review.  The Supreme Court has been clear that the political question doctrine is a "narrow exception to" courts' presumptive exercise of jurisdiction. *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012).  Interpreting constitutional provisions is "well within the competence of the Judiciary."  *U.S. Dep't of Com. v. Montana*, 503 U.S. 442, 458 (1992) (rejecting doctrine's application to interpretation of the apportionment provisions of the Constitution).  Likewise, "evaluating the constitutionality of statutes is firmly within the bailiwick of the judiciary."  *Texas*, 144 F.4th at 655 (discussing *Zivotofsky*).  Rejecting Texas's arguments thus represents a "familiar judicial exercise."  *Zivotofsky*, 566 U.S. at 196; *cf. id.* (by contrast, imposing "the courts' own unmoored determination" of policy would be barred).

## IV.     THE EQUITIES SUPPORT AN INJUNCTION.

Plaintiffs, who face arrest, prosecution, and removal under S.B. 4, have shown irreparable harm.  TRO Mot. 16-17.  In response, Defendant again claims that there is no evidence that Defendant will enforce S.B. 4 against Plaintiffs.  But as explained above, Defendant never disclaims enforcement, instead emphasizing that Texas state agencies "have worked  . . . to . . . enforce federal immigration laws" and that "[e]ven greater success can and likely will be achieved if S.B. 4 is allowed to go into effect and is fully implemented."  TRO Opp. 7.[6]  Defendant claims that no one "will be subject to removal from the United States pursuant to S.B. 4 for a substantial period of time."  *Id.* at 15.  But that is not true: The statute is designed to encourage or coerce supposedly voluntary acceptance of state deportation orders as soon as the beginning of the prosecution.  *Texas*, 2026 WL 1122127, at *67 (Richman, J., dissenting).

---

[6] Defendant claims that Plaintiffs fear enforcement by "local" officials, and he is not one.  But the Plaintiffs' declarations invoke fear of enforcement generally.  L.M.L. Decl. ¶ 8; K.G.S. Decl. ¶ 8.

As Plaintiffs showed, TRO Mot. 17-18, and as this Court has already concluded, the balance of equities and public interest favor enjoining S.B. 4. *Texas*, 719 F. Supp. 3d at 698-99. Defendant invokes its general interest in "enforc[ing] its own laws," TRO Opp. 16, but "[a] state's '[f]rustration of federal statutes and prerogatives [is] not in the public interest.'" *Texas*, 719 F. Supp. 3d. at 698 (quoting *Alabama*, 691 F.3d at 1301). As to the supposed "harms to Texas associated with illegal immigration," TRO Opp. 16, the opportunities Congress provided to cooperate with the federal government "ameliorate[] [Defendant's] concern." *Iowa Migrant Movement for Just.*, 157 F.4th at 929. "Federal officials of course already enforce immigration law—and many [Texas] law-enforcement agencies have entered into agreements with the Department of Homeland Security that allow local police to enforce federal immigration law." *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *6 (11th Cir. June 6, 2025).

## V.    A TEMPORARY RESTRAINING ORDER IS WARRANTED.

Defendant claims that because the Complaint does not specifically request a TRO, it should be denied. TRO Opp. 8-9. The Complaint seeks "any other and further relief that this Court may deem fit and proper." Dkt. # 1 Prayer for Relief. And Defendant cites no authority for the proposition that a TRO must be specifically requested in the complaint. In any event, given that the documents were filed the same day, there can be no prejudice to Defendant from lack of notice.

Defendant also suggests that a TRO is not necessary. TRO Opp. 8-9. But he does not contest that, absent injunctive relief, S.B. 4 will go into effect on May 15.[7]

## CONCLUSION

The motion for a TRO and Preliminary Injunction should be granted.

---

[7] A stay pending appeal, TRO Opp. 17 n.13, should be denied.

Dated: May 11, 2026

David A. Donatti (TX Bar No. 24097612)
Adriana C. Piñon (TX Bar No. 24089768)
Carolina Rivera Nelson (TX Bar No. 24132741)\*\*
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org
criveranelson@aclutx.org

Daniel Hatoum
(TX Bar No. 24099136)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, TX 78516
(956) 787-8171 ext. 208
daniel@texascivilrightsproject.org

Kate Gibson Kumar
(TX Bar No. 24137588)
Daniel Woodward
(TX Bar No. 24138347)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
kate@texascivilrightsproject.org
danny@texascivilrightsproject.org

Dustin Rynders
Texas Bar No. 24048005
Texas Civil Rights Project
PO Box 1108
Houston, TX 77251-1108
dustin@texascivilrightsproject.org

/s/ *Cody Wofsy*
Cody Wofsy
Spencer Amdur
Hannah Steinberg\*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (332) 220-1702
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org

Kathryn Huddleston\*\*\* (TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

Omar Jadwat\*
Lee Gelernt
Grace Choi\*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
lgelernt@aclu.org
gchoi@aclu.org

\*Pro Hac Vice Application Forthcoming
\*\* Admission to Western District of Texas Pending
\*\*\* Application for Admission to Western District of Texas Forthcoming; barred in Texas and Arizona, not barred in the District of Columbia, practice supervised by a member of the D.C. Bar

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, I electronically filed the foregoing with the Clerk of Court by using the District Court CM/ECF system.  A true and correct copy of this document has been served via the Court's CM/ECF system on all counsel of record.

*/s/ Cody Wofsy*
Cody Wofsy
